**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (3d) 140573-UB

Order filed July 8, 2020

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 13th Judicial Circuit, La Salle County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-14-0573 Circuit No. 99-CF-395 |
| ROBERT CHRISTOPHER JONES, | ) ) | |
| Defendant-Appellant. | ) ) | Honorable H. Chris Ryan, Judge, Presiding. |

_____

JUSTICE SCHMIDT delivered the judgment of the court.
Justice O'Brien concurred in the judgment.
Justice Wright, specially concurred.

**ORDER**

¶ 1    *Held*: The trial court did not err in denying defendant's *pro se* motion for leave to file a successive postconviction petition.

¶ 2    Defendant, Robert Christopher Jones, appealed from the trial court's order denying leave to file a successive postconviction petition. Defendant argued that the trial court erred in finding that he failed to satisfy the cause and prejudice test. Specifically, defendant contended that his

sentence constitutes a mandatory life sentence for a juvenile offender in violation of the United States Supreme Court's decision in *Miller v. Alabama*, 567 U.S. __, 132 S. Ct. 2455 (2012).

¶ 3      Initially, this court affirmed the trial court's judgment. *People v. Jones*, 2016 IL App (3d) 140537-U. This court found that the trial court did not err in finding that defendant failed to satisfy the cause and prejudice test for leave to file his successive postconviction petition. We found that defendant did not receive a life sentence. In addition, we found that the sentence was not mandatory given that defendant entered a fully negotiated plea.

¶ 4      In a supervisory order, the Illinois Supreme Court directed us to vacate that decision and to reconsider it in light of *People v. Buffer*, 2019 IL 122327. In *Buffer*, the supreme court determined that any sentence greater than 40 years' imprisonment constitutes a *de facto* life sentence.

¶ 5      Pursuant to the Illinois Supreme Court's supervisory order, we vacate our prior judgment in *Jones*, 2016 IL App (3d) 1405370-U, and this order will now stand as our disposition for this matter. For the reasons stated below, we again affirm the dismissal of defendant's motion for leave to file a successive postconviction petition.

¶ 6                                    I. FACTS

¶ 7      At 16 years old, defendant was charged by indictment with eight counts of first degree murder (720 ILCS 5/9-1(a)(1), (a)(3) (West 1998)), two counts of armed robbery (*id.* § 18-2), one count of residential burglary (*id.* § 19-3), and one count of home invasion (*id.* § 12-11). The indictment alleged that defendant stabbed and killed George and Rebecca Thorpe, while committing armed robbery, residential burglary, and home invasion. The indictment also alleged that defendant, while armed with a knife, took property from the presence of George and Rebecca

by use of force, entered their dwelling with the intent to commit theft while knowing them to be present and intentionally caused them injury.

¶ 8    On May 19, 2000, pursuant to a fully negotiated plea agreement, defendant pled guilty to one count of first degree murder (intentional murder of Rebecca), one count of residential burglary, and two counts of armed robbery. The remaining counts were dismissed. The trial court admonished defendant regarding the consequences of pleading guilty. After admonishing defendant, the court found defendant's plea to be knowingly and intelligently made. The parties waived a hearing in mitigation and aggravation and waived the preparation of a presentence investigation report. Pursuant to the agreement, the trial court sentenced defendant to concurrent prison terms of 50 years for murder, 15 years for residential burglary and 30 years for each armed robbery.

¶ 9    The factual basis presented at the guilty plea hearing established that defendant confessed to entering George and Rebecca's home at 2 a.m. to obtain money. Defendant was armed with a knife. Defendant considered George and Rebecca to be his great aunt and uncle. Defendant said he did not know how many times he stabbed George, but then went to Rebecca's room and stabbed her when she reached for the telephone. Defendant did not recall how many times he stabbed Rebecca. Rebecca made "gurgling sounds," so defendant put a pillow over her face to stop the sounds. Defendant then took Rebecca's purse and lockbox.

¶ 10    Defendant did not appeal his convictions, but he subsequently filed a *pro se* petition for postconviction relief. Defendant argued that his trial counsel was ineffective and his sentence violated his due process rights. After an evidentiary hearing, the trial court denied defendant's petition. Defendant appealed, and this court affirmed. *People v. Jones*, 3-02-0671 (2004) (unpublished order under Supreme Court Rule 23).

¶ 11    Next, defendant filed a *pro se* successive postconviction petition. The petition alleged that the automatic-transfer provision for juvenile offenders, and the truth-in-sentencing requirement that he serve his entire sentence violated the constitutional principles announced in the United States Supreme Court's decisions in *Miller v. Alabama*, 567 U.S. __, 132 S. Ct. 2455 (2012), *Graham v. Florida*, 560 U.S. 48 (2010), and *Roper v. Simmons*, 543 U.S. 551 (2005). Two weeks after filing his *pro se* successive postconviction petition, defendant filed a *pro se* motion for leave to file his successive postconviction petition. Defendant alleged he forgot to include the motion with his successive postconviction petition. The motion argued that he should be granted leave to file his successive petition because the *Miller* line of cases had not been decided when he pled guilty, and the statutory scheme under which he was sentenced was void. The trial court denied defendant leave to file his successive petition.

¶ 12                                II. ANALYSIS

¶ 13    On appeal, defendant contends that the cause should be remanded for further postconviction proceedings because recent case law (*Miller*, *Roper*, *Graham*) and changes in Illinois sentencing law entitle him to file a successive petition. The Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2014)) contemplates the filing of only one postconviction petition. *People v. Davis*, 2014 IL 115595, ¶ 14. Nevertheless, a successive petition for postconviction relief can be considered on its merits if it meets the two-part cause and prejudice test. 725 ILCS 5/122-1(f) (West 2014). "Cause" is defined as an "objective factor external to the defense that impeded counsel's efforts to raise the claim in an earlier proceeding" and "prejudice" exists where the petitioner can show that the alleged constitutional error so infected his trial that the resulting conviction violated due process. *Davis*, 2014 IL 115595, ¶ 14.

¶ 14    Upon review, we find that defendant established "cause" based on the simple fact that *Miller*, its progeny, and the recent changes in Illinois sentencing law were not established at the time he filed his first postconviction petition. *Id.* ¶ 42. Nevertheless, we hold that defendant failed to establish prejudice because he waived any constitutional challenge to his sentence by fully negotiating his plea.

¶ 15    *Miller* holds that a mandatory life sentence for a juvenile violates the eighth amendment prohibition against cruel and unusual punishment. *Miller*, 567 U.S. at 479. *Miller* does not prohibit sentencing a juvenile offender to life imprisonment, but instead, requires the sentencing court to consider a juvenile's youth and attendant circumstances prior to sentencing. *Id.* This principle applies not only to a sentence of life imprisonment, but also *de facto* life sentences. *People v. Reyes*, 2016 IL 119271, ¶¶ 7, 8. In *Buffer*, The Illinois Supreme Court drew a bright-line rule that a sentence greater than 40 years constitutes a *de facto* life sentence. *Buffer*, 2019 IL 122327, ¶ 42. *Miller* applies retroactively. *People v. Davis*, 2014 IL 115595, ¶ 34.

¶ 16    In analyzing defendant's claim, we note that neither the United States Supreme Court nor the Illinois Supreme Court has extended the holding in *Miller* to sentences that result from a fully negotiated plea. To the contrary, under Illinois law, defendant waived any claim of a constitutional error by virtue of his fully negotiated plea. Defendant entered into a plea agreement in which he stipulated to a *de facto* life sentence. In so doing, defendant relinquished any rights to challenge nonjurisdictional errors or irregularities, including constitutional errors. *People v. Townsell*, 209 Ill. 2d 543, 545 (2004) (citing *People v. Peeples*, 155 Ill. 2d 422, 491 (1993)). A guilty plea "represents a break in the chain of events that had preceded it," and a defendant who has pleaded guilty may not claim his constitutional rights were violated before he entered his plea. *People v. Wendt*, 283 Ill. App. 3d 947, 956-57 (1996) (citing *Tollet v. Henderson*, 411 U.S. 258, 267 (1973).

Not only did defendant waive his right to challenge his sentence, he also affirmatively waived his right to present evidence in mitigation and the preparation of a presentence investigation report. As a result, defendant waived any claim of a constitutional violation premised on the holding in *Miller*. He cannot now argue that his sentence is unconstitutional under *Miller*.

¶ 17 In short, the sentencing court never denied defendant the opportunity to offer mitigation evidence of his youth and attendant characteristics. Instead, he affirmatively waived that right as part of a fully negotiated plea agreement. A guilty plea entered on the competent advice of counsel waives all constitutional objections to the conviction. *Townsell*, 209 Ill. 2d at 545. His present argument amounts to a challenge that he was never afforded an opportunity to present evidence that he never offered and to request relief he never sought.

¶ 18 In reaching this conclusion, we reject defendant's reliance on recent changes in Illinois sentencing law. The first statute cited by defendant (730 ILCS 5/5-4.5-105 (West 2015)) requires sentencing judges to consider certain factors that distinguish juvenile offenders from adult offenders, and exercise discretion when deciding to impose a statutory 25-years-to-life gun enhancement for juvenile offenders. Notably, the statute relates to gun enhancement sentences and does not extend to first degree murder sentences. The other statute (730 ILCS 5/5-8-1(a)(1)(c) (West 2014)) was amended to limit mandatory life sentences to adult offenders as reflected in *Miller*. As discussed above, defendant waived his constitutional argument by virtue of his fully negotiated plea.

¶ 19 Despite the above, defendant requests that we consider the context in which he pled guilty. Specifically, defendant calls our attention to the possible sentence he faced had he gone to trial and been convicted of two counts of first degree murder: a mandatory natural life sentence. See 730 ILCS 5/5-8-1(a)(1)(c)(ii) (West 1998). According to defendant, he was forced to plead guilty

in order to avoid a mandatory life sentence—a sentence that violates *Miller*. Defendant's argument overlooks the fact that this sentencing provision was not actually applied to him in light of the fact he negotiated (and agreed) to plead guilty to a single count of first degree murder. The mere fact that defendant faced the *possibility* of a mandatory life sentence does not mean that defendant's 50-year negotiated sentence violates the principles established in *Miller*, much less establish prejudice for leave to file a successive postconviction petition.

¶ 20 To the extent defendant suggests that facing the possibility of a mandatory life sentence rendered his plea involuntarily made, we note that the trial court admonished defendant prior to accepting his plea. The court found defendant's plea to be knowingly and voluntarily made and accepted his plea. We agree that his plea was voluntarily and intelligently made. A plea is not invalid simply because "the maximum penalty then assumed applicable has been held inapplicable in subsequent judicial decisions." *Brady v. U.S.*, 397 U.S. 742, 757 (1970). In other words, *Miller's* holding that mandatory life sentences for juveniles are unconstitutional does not affect the voluntariness of defendant's plea.

¶ 21                                III. CONCLUSION

¶ 22 For the foregoing reasons, we affirm the judgment of the circuit court of La Salle County.

¶ 23 Affirmed.

¶ 24 JUSTICE WRIGHT, specially concurring:

¶ 25 I concur in all respects with the majority's disposition. I write separately to point out that the sentencing relief defendant has requested in his successive postconviction petition is unfounded and has no basis in law.

¶ 26 Here, defendant requests a retrospective hearing to have the circuit court exercise its discretion, contrary to statute, and decide whether this double homicide should have been

addressed by the juvenile division of the circuit court rather than moving forward as a criminal prosecution. Absent the exercise of judicial discretion, defendant claims he did not receive due process. Respectfully, based on this record, I submit that it is extremely unlikely that any judge would have concluded that these two senseless murders and various other crimes did not merit the criminal prosecution of this youthful offender in an adult court setting. Moreover, defendant does not claim that if the trial court had been allowed to exercise its discretion, the double homicide would have remained a juvenile court proceeding subject to the dispositional limitations of the Juvenile Court Act. Even if due process required the State to begin proceedings against this youthful offender in juvenile court, which it does not, the error would be harmless. See *People v. Jones*, 81 Ill. 2d 1, 6-7 (1979) (holding that indicting a minor prior to the court's transfer of the case from juvenile court to criminal court, while error, is not necessarily reversible error). Therefore, I conclude the request for a retrospective hearing on whether this matter should have resulted in a criminal prosecution is entirely meritless.

¶ 27 In addition, defendant is equally unentitled to a new sentencing hearing based on the procedural posture of this appeal. As the majority emphasizes, this was a fully negotiated guilty plea. In order to have the trial court consider his youthful characteristics for purposes of sentencing, defendant would have to request to withdraw his guilty plea, a plea which resulted in a sentence defendant approved as part of a fully negotiated package. Presumably, defendant has not adopted this approach because that process would result in the reinstatement of the various counts related to the murder of a second victim that were dismissed as part of the original plea agreement.

¶ 28 For these reasons, I agree with the majority's analysis and would add that the relief requested on the face of this successive postconviction petition was doomed from the outset.